UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION


FILED
MAR 3 0 2017

| | |
|---|---|
| TRAVIS RAY MCPEEK,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>BON HOMME COUNTY SHERIFF KELSEY; PENNINGTON COUNTY STEPHANIE BORN; NORTHWEST SHUTTLE, UNKNOWN AGENT; MARICOPA COUNTY SHERIFF, FABIO MORAN; UNKNOWN MARICOPA COUNTY ATTORNEY; UNKNOWN MESA POLICE; UNKNOWN APACHE COUNTY OFFICERS; MONTEZUMA COUNTY OFFICERS; SGT. BURK; UNKNOWN MALE NURSE; UNKNOWN LA PLATA COUNTY OFFICERS; UNKNOWN CASTLE ROCK OFFICERS; UNKNOWN BOULDER OFFICERS; UNKNOWN PENNINGTON COUNTY OFFICERS; SGT. MUNSCH; CPL. MUHLBEIER; YANKTON COUNTY SHERIFF JIM VALASKEZ; OFFICER HANES; SGT. CASS; JAIL ADMINISTRATOR PAYER; BON HOMME COUNTY OFFICER KELLY YOUNG; PROSECUTING ATTORNEY LISA ROTHSCHADL; UNKNOWN SOUTH DAKOTA TRANSPORT OFFICERS,<br><br>　　　　　　　　Defendants. | 4:17-CV-04015-RAL<br><br><br><br>OPINION AND ORDER DISMISSING COMPLAINT IN PART AND DIRECTING SERVICE |

　　　　Plaintiff Travis R. McPeek ("McPeek"), an inmate at the Yankton County Jail in Yankton, South Dakota, filed this lawsuit pursuant to 42 U.S.C.

§ 1983. Doc. 1. This Court screened his complaint pursuant to 28 U.S.C. § 1915A, and ordered McPeek to amend his complaint. Doc. 6. McPeek has now filed his amended complaint. Doc. 8. For the following reasons, the Court dismisses his complaint in part and directs service.

### I. FACTS ALLEGED IN THE COMPLAINT[1]

On January 4, 2017, McPeek signed a "waiver of extradition" in Maricopa County, Arizona, with the alleged understanding that Bon Homme County, South Dakota would transport him. Doc. 8 at 4. McPeek alleges that he suffers from multiple medical issues. He alleges that he has myofascial and tissue damage from being struck by a truck and suffers from chronic pain from that injury as well as being shot multiple times. *Id.* at 9-10. He further suffers from mobility issues because of his injuries. *Id.* at 10.

On January 12, 2017, McPeek was transferred from Maricopa County to Apache County Jail in St. John, Arizona. *Id.* at 9. He alleges that the Apache County officer who transported him was aware of his medical issues, but put him in a belly chain and handcuffs, which aggravated McPeek's prior injuries. *Id.* McPeek alleges that when he arrived at the Apache County Jail, he was strip searched in a degrading manner, including his genitals being touched. *Id.* He was denied medication and was sent through the booking process. *Id.* at 10-11. He was chained in a similar manner the next day and transported to Gallop, New Mexico. *Id.* at 11. He was taken to Montezuma County Jail in

---

[1] This Court makes no findings of fact at this point in the case. The matters set forth in this section are taken from the factual allegations pled in McPeek's Amended Complaint, which this Court must take as true on initial screening.

2

Cortez, Colorado, then La Plata County Jail Colorado. *Id.* at 11-12. He was chained during transport and searched once he arrived at these jails. *Id.*

In La Plata, McPeek alleges that officers were aware of his medical issues. *Id.* at 12. He was given permission to use a bottom bunk, but it was taken away after McPeek requested to move to another cell because his cell mate was mad at him. *Id.* at 12-13. McPeek grieved these issues and felt that he was discriminated against during the procedure for his disability and because he had filed complaints. *Id.* at 14-15.

Later, Sgt. Burke searched McPeek roughly, including "karate chopping" his testicles. *Id.* at 15. Burke then put McPeek in segregation. *Id.* McPeek asked him why, but he did not respond. *Id.* McPeek complained that he was put in segregation, that he was searched roughly, and that he was denied a bible, grievances, and toilet paper, but never received a response. *Id.* at 15-16.

On January 17, 2017, McPeek was transported to Pennington County Jail in South Dakota, via Alamosa County, Colorado; Colorado Springs, Colorado; Pueblo, Colorado; Jefferson County, Colorado; Boulder, Colorado; Cheyanne, Wyoming; Lusk, Wyoming; and Rushville, Nebraska. *Id.* at 17-20. In these jails, he was roughly searched and booked. *Id.*

While in Pennington County Jail, McPeek filed a grievance arguing that his transfer was illegal. *Id.* at 20. Sgt. Munsch responded that the issue was non-greivable. *Id.* He also filed a grievance concerning admittance into the "Rebound Program," and was told he was ineligible because he was on a hold through the federal government or South Dakota Department of Corrections.

3

*Id.* at 21. At Pennington County Jail, he was also denied medical treatment. *Id.* at 22.

On January 26, 2017, McPeek was transferred to Yankton County Jail on the South Dakota Prison Bus. *Id.* At Yankton, McPeek alleges he was searched by Officer Hanes in a degrading manner, including having his penis and butt touched. *Id.* at 22-23. He was placed in segregation in the jail even though he had no disciplinary problems. *Id.* at 23. McPeek alleges he was denied his medications by Sgt. Cass for five weeks. *Id.* He also alleges that he filed a number of grievances about different incidences, but they were denied by Payer, the Jail Administrator. *Id.* at 23-24.

At the end of his complaint, McPeek also makes a number of unrelated allegations concerning an incident in 2016. He alleges that Bon Homme County Officer Kelly Young conducted an illegal search of his vehicle and attacked him without reason. *Id.* at 25. He also claims that Young claimed McPeek ran him over, but McPeek denies this. *Id.* at 27. Finally, McPeek claims that these allegations were in the news and destroyed his reputation. *Id.*

## II.   PROCEDURAL BACKGROUND

On February 8, 2017, McPeek filed a complaint pursuant to 42 U.S.C. § 1983. Doc. 1. Because McPeek is incarcerated, this Court screened his complaint pursuant to 28 U.S.C. § 1915A. This Court ordered McPeek to amend his complaint by April 3, 2017, because he had failed to state a claim upon which relief could be granted. Doc. 6. McPeek timely filed an amended complaint. Doc. 8.

## III.  LEGAL STANDARD

At this stage of the case, this Court must accept the well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014). Civil rights and pro se complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985); *Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013). Civil rights complaints cannot be merely conclusory. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993); *Parker v. Porter*, 221 F. App'x 481, 482 (8th Cir. 2007).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "If a plaintiff cannot make the requisite showing, dismissal is appropriate." *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985).

Under 28 U.S.C. § 1915A, this Court must screen prisoner claims filed in forma pauperis and determine whether they are (1) "frivolous, malicious, or fail[ ] to state a claim on which relief may be granted; or (2) seek[ ] monetary relief from a defendant who is immune from such relief." *See also Onstad v. Wilkinson*, 534 F. App'x 581, 582 (8th Cir. 2013).

IV.  DISCUSSION

A.  **Screening Under § 1915A**

McPeek's amended complaint does not specifically explain what claims he seeks to raise. This Court construes his amended complaint as raising a number of claims. McPeek raises claims concerning his medical treatment, his housing in segregation, his transfer, defendants' response to his grievances, and defendants' searches.

1.  **Medical Claims**

McPeek claims that defendants working at the Pennington County Jail and the Yankton County Jail violated his Eighth Amendment rights by being deliberately indifferent to his serious medical needs. "[A] prison official who is deliberately indifferent to the medical needs of a prisoner violates the prisoner's constitutional rights." *Letterman v. Does*, 789 F.3d 856, 861 (8th Cir. 2015). To state an Eighth Amendment claim, plaintiffs must show "a substantial risk of serious harm to the victim," and "that the prison official was deliberately indifferent to that risk of harm . . . ." *Id.* at 861-62 (citing *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006)). "The deliberate indifference element has two components: an actor must 'know[ ] of and disregard[ ] an excessive risk to inmate health or safety.' " *Id.* at 862 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

McPeek alleges that he was denied his medication. He alleges that he came to Yankton with prescriptions and medical paperwork. Doc. 8 at 23. Even though prison officials were aware that he required medication, he alleges that

6

Sgt. Cass denied him his medications for five weeks. *Id.* Therefore, McPeek states a deliberate indifference claim against Cass upon which relief may be granted.

McPeek also alleges that he was denied his medication in Pennington County Jail, but does not name a defendant in this matter. At this point in litigation, McPeek's naming of "Unknown Pennington County Officers" suffices until McPeek has the chance to discover the identities of those officers.

### 2. Segregation at Yankton County Jail

McPeek claims that he was put in segregation in the Yankton County Jail even though he had not been disciplined. "Pretrial detainees are presumed innocent and may not be punished." *Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992) *cert. denied*, 507 U.S. 1009 (1993) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). "The determination whether a particular restriction or condition accompanying pretrial detention is punishment turns on whether the restriction or condition is reasonably related to a legitimate governmental objective." *Id.* (citing *Bell*, 441 U.S. at 538–39). Placing a pretrial detainee in administrative segregation is punishment. *Id.* (citing *Chestnut v. Magnusson*, 942 F.2d 820, 823 (1st Cir. 1991); *Bell v. Wolff*, 496 F.2d 1252, 1254 (8th Cir. 1974)); *see also Phillips v. Kiser*, 172 F. App'x 128, 129 (8th Cir. 2006) (finding that pretrial detainee stated a claim against prosecutor for ordering solitary confinement to punish the detainee).

McPeek alleges that he was placed in segregated housing. Doc. 1 at 23. He alleges that he had no disciplinary record and was classified as a medium

security prisoner even though he had previously been classified as "low security." *Id.* A reasonable inference from the Amended Complaint is that McPeek is alleging that he was placed in segregation as a punishment. Therefore, McPeek has stated a claim under the Due Process Clause upon which relief may be granted.

### 3. Out-of-State Defendants

Much of McPeek's complaint is devoted to actions in states other than South Dakota taken by out-of-state defendants. To determine whether personal jurisdiction can be exercised over a nonresident defendant, the district court must determine that personal jurisdiction exists under the forum state's long-arm statute and that the exercise of personal jurisdiction is consistent with due process. *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010). The South Dakota long arm statute confers jurisdiction to the fullest extent allowed by the Due Process Clause. *Bell Paper Box, Inc. v. Trans W. Polymers, Inc.*, 53 F.3d 920, 921 (8th Cir. 1995). This Court must therefore address only the question whether the exercise of personal jurisdiction satisfies due process. *Dakota Indus. v. Ever Best Ltd.*, 28 F.3d 910, 914 (8th Cir. 1994).

"Due process requires that there be minimum contacts between the nonresident defendant and the forum state such that the assertion of personal jurisdiction is consistent with traditional notions of fair play and substantial justice." *Wells Dairy*, 607 F.3d at 518 (citations omitted). " 'Sufficient contacts exist when the defendant's conduct and connection with the forum state are

such that [it] should reasonably anticipate being haled into court there.'" Id. (quoting *Bell Paper Box*, 22 F.3d at 818).

McPeek does not allege any facts showing that these out of state defendants had any contacts with South Dakota. Therefore, this Court may not exercise jurisdiction over the out-of-state defendants. Fabio Moran, Unknown Maricopa County Attorney, Unknown Mesa Police, Unknown Apache County Officers, Unknown Montizuma County Officers, Sgt. Burke, Unknown Male Nurse, Unknown La Plata County Officers, Unknown Castle Rock Officers, and Unknown Boulder Officers are dismissed as defendants. *See also Sanders v. United States*, 760 F.2d 869, 871 (8th Cir.1985) (affirming dismissal under § 1915 because plaintiff could allege "no set of facts which would support an exercise of jurisdiction over the defendants by the district court").

### 4.  Claims under the Interstate Agreement on Detainers

McPeek alleges that his transfer violated the Interstate Agreement on Detainers Act (IADA). "The basic purpose of the Interstate Agreement on Detainers is to ensure prompt disposition of outstanding charges in order to implement a prisoner's right to a speedy trial and to prevent interference with his participation in treatment and rehabilitation programs." *Rhodes v. Schoen*, 574 F.2d 968, 969-70 (8th Cir. 1978) (citing *United States ex rel. Esola v. Groomes*, 520 F.2d 830, 833-34 (3d Cir. 1975)). McPeek does not raise a claim concerning disposition of his charges. He argues instead that he agreed to be transferred but not by the Northwest Shuttle. The IADA does not grant rights concerning the mode of transfer. Therefore, McPeek fails to state a claim under

9

the IADA upon which relief may be granted, and his claim is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 5. Due Process for Transfer

McPeek claims that his Due Process rights were violated when he was transferred. However, "the due process clause is not implicated when a pretrial detainee is transferred from one prison to another." *Ervin v. Busby*, 992 F.2d 147, 150 (8th Cir. 1993). There are certain situations in which a transfer may violate Due Process, *see id.*, but they do not apply here. Therefore, McPeek fails to state a Due Process claim upon which relief may be granted, and his claim is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 6. Equal Protection and Eighth Amendment

McPeek claims that his rights under the Equal Protection Clause and the Eighth Amendment were violated by his transfer. He does not explain how his rights were violated. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). McPeek merely uses the phrases "Equal Protection" and "Eighth Amendment." He does not allege facts that would support a claim under either. Therefore, McPeek fails to state a claim under the Equal Protection Clause and the Eighth Amendment upon which relief may be granted, and his claim is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 7. Grievances

McPeek alleges that he was not able to grieve certain issues at both the Pennington County Jail and the Yankton County Jail. Although some of the grievances may have contained constitutional claims, see Doc. 8 at 23-24, McPeek does not provide facts to state a claim on any of those constitutional grounds. Defendants' mere denial of McPeek's grievances did not violate his constitutional rights. "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment." *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (quoting *Azeez v. DeRobertis*, 568 F.Supp. 8, 10 (N.D. Ill. 1982)). Therefore, McPeek fails to state a claim upon which relief may be granted, and his claims are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 8. Search at Yankton

McPeek alleges that his rights were violated when he was searched at Yankton County Jail. "In *Bell v. Wolfish*, 441 U.S. 520 (1979), the Supreme Court articulated a balancing test for determining whether searches conducted on pretrial detainees were reasonable under the Fourth Amendment." *Serna v. Goodno*, 567 F.3d 944, 949 (8th Cir. 2009). In this balancing test, "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). While McPeek claims he

11

was searched "in a degrading manner," Doc. 8 at 22, he does not explain how the search was degrading or allege any facts that would cause this Court to weigh the *Bell* factors in his favor. Therefore, McPeek fails to state a claim upon which relief may be granted, and his claim is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## V.   ORDER

Accordingly, it is ORDERED

1. McPeek fails to state a claim upon which relief may be granted against Bon Homme County Sheriff Kelsey, Stephanie Born, Unknown Northwest Shuttle Agent, Fabio Moran, Unknown Maricopa County Attorney, Unknown Mesa Police, Unknown Apache County Officers, Unknown Montezuma County Officers, Sgt. Burke, Unknown Male Nurse, Unknown La Plata County Officers, Unknown Castle Rock Officers, Unknown Boulder Officers, Sgt. Munsch, Cpl. Muhlbeier, Jim Valaskez, Officer Hanes, Officer Kelly Young, Lisa Rothschadl, and Unknown South Dakota Transport Officers. and these defendants are dismissed from the case pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

2. McPeek states a claim that he was denied adequate medical care in South Dakota and states a claim that his Due Process rights were violated when he was put in segregation in South Dakota. The remainder of McPeek's claims are dismissed pursuant to 28 U.S.C.

§§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief may be granted.

3. The Clerk shall send blank summons forms to McPeek so he may cause the summons and complaint to be served upon the defendants.

4. The United States Marshal shall serve a copy of the amended complaint (Doc. 8), Summons, and this Order upon defendants Unknown Pennington County Officers, Sgt. Cass, and Jail Administrator Payer as directed by McPeek. All costs of service shall be advanced by the United States.

5. Defendants will serve and file an answer or responsive pleading to the remaining claims in the complaint on or before 21 days following the date of service.

6. McPeek will serve upon defendants, or, if appearance has been entered by counsel, upon their counsel, a copy of every further pleading submitted for consideration by the court. He will include with the original paper to be filed with the clerk of court a certificate stating the date and that a true and correct copy of any document was mailed to defendants or their counsel.

7. McPeek will keep the court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the District of South Dakota Civil Local Rules while this case

is pending.

Dated March 30th, 2017.

                                               BY THE COURT:

                                               ROBERTO A. LANGE
                                               UNITED STATES DISTRICT JUDGE