UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| TRAVIS R. MCPEEK,<br><br>Plaintiff,<br><br>vs.<br><br>UNKNOWN PENNINGTON COUNTY OFFICERS, INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES; CASSONDRA RABE, MARK PAYER,<br><br>Defendants. | 4:17-CV-04015-RAL<br><br><br>OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT AND GRANTING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT |

Plaintiff Travis R. McPeek (McPeek), an inmate in state custody, brought this suit alleging that various prison and prisoner transport service employees violated his civil rights under 42 U.S.C. § 1983. Doc. 1 at 2. Pursuant to 28 U.S.C. § 1915A, this Court screened McPeek's initial complaint and granted him leave to amend it. Doc. 6. This Court then dismissed certain defendants and claims in his amended complaint, leaving only Unknown Pennington County Officers, Cassondra Rabe (Rabe), and Mark Payer (Payer) as defendants. Doc. 9. This Court dismissed all but two of the eight claims in McPeek's amended complaint, leaving claims that McPeek was denied adequate medical care in South Dakota in violation of his constitutional rights and that his Fifth and Eighth Amendment rights were violated when he was put in administrative segregation in the Yankton County Jail. Doc. 9 at 12.

Defendants moved for summary judgment, Doc. 41; Doc. 42, and McPeek filed a separate motion for leave to amend his complaint, Doc. 57. As was required of him by Local Rule 56.1,

1

McPeek responded to the defendants' statements of undisputed material facts which accompanied their motions for summary judgment, making clear that he disputed the summary judgment motion. D.S.D. Civ. LR 56.1(B); Doc. 64; Doc. 65. However, McPeek did not file a response brief raising legal arguments in opposition to the defendants' motions for summary judgment within 21 days of service of their motions. D.S.D. Civ. LR 7.1(B). Instead, McPeek styled his proposed amended complaint as an affidavit and attached various documents to it, Doc. 57-1, and filed separate affidavits of himself, Ronnie Young, and Robert Little to contest certain matters in the summary judgment motions, Docs. 58, 59, 60. McPeek, who is a pro se inmate, also filed a "statement" regarding his lack of legal sophistication and access to legal resources. Doc. 66. Defendants Payer and Rabe then moved for entry of an order declaring McPeek in default for failing to file a brief opposing their motion for summary judgment. Doc. 68. Defendant Unknown Pennington County Officers joined in the motion. Doc. 71. McPeek's response to the statements of material facts, affidavits, statement and effort to amend his complaint with attachments, while not technically a response brief, are sufficient filings to contest the summary judgment motions, so the motions to deem McPeek in default are denied. For the reasons explained below, this Court denies McPeek's motion to amend his complaint, grants Unknown Pennington County Officers' Motion for Summary Judgment, and grants in part and denies in part Rabe and Payer's Motion for Summary Judgment.

## I. Factual Background

On August 6, 2016, McPeek was involved in an incident in Tyndall, South Dakota which resulted in his indictment for aggravated assault against law enforcement officer Kelly Young. Doc. 46 at ¶ 1; Doc. 64 at ¶ 1. Following the incident, McPeek traveled to Mesa, Arizona, where he was arrested on December 15, 2016. Doc. 46 at ¶¶ 1-3; Doc. 52-4; Doc. 64 at ¶ 1. During the

arrest, McPeek was shot, perhaps five times apparently with rubber bullets, by law enforcement, and suffered injuries for which he was hospitalized for a day. Doc. 46 at ¶¶ 4-5; Doc. 50 at ¶ 4; Doc. 64 at ¶¶ 2-3; Doc. 65 at ¶ 4. On December 16, 2016, while hospitalized, McPeek was prescribed thirty 5–10 mg tablets of oxycodone to be taken every four hours for five days and fourteen docusate sodium 100 mg capsules to be taken twice daily for seven days. Doc. 8-10; Doc. 8-11; Doc. 50 ¶ 8-9; Doc. 65 ¶ 8-9. Neither prescription indicated it was refillable beyond the short period for which it was prescribed.[1] Doc. 8-10; Doc. 8-11. On December 27, 2016, he was prescribed thirty ibuprofen 800 mg tablets to be taken twice daily for fifteen days with no refills. Doc. 8-5; Doc. 52-6 at 2. McPeek remained in Maricopa County custody from his arrest until January 2, 2017, when he began his extradition to the Yankton County Jail in Yankton, South Dakota via the Northwest Shuttle prisoner transportation service. Doc. 8-4; Doc. 46 at ¶¶ 11-13; Doc. 64 at ¶ 4. En route to Yankton County, McPeek was held in various state facilities, including the Pennington County Jail in Rapid City, South Dakota, from January 19 until January 26. Doc. 50 at ¶ 6; Doc. 65 at ¶ 6.

On January 20, 2017, McPeek participated in filling out an inmate intake form at the Pennington County Jail. Doc. 50 at ¶ 15; Doc. 52-2; Doc. 65 at ¶ 15. The intake form records that McPeek reported being on oxycodone, Zyrtec, Motrin, Excedrin, Tramadol, and Flexeril. Doc. 50 at ¶ 16; Doc. 65 at ¶ 16. Because of the wounds from his arrest in Mesa, McPeek was placed on a lower bunk restriction and referred to jail medical staff. Doc. 50 at ¶ 18; Doc. 52-2; Doc. 65 at ¶ 18. On his first night in the Pennington County Jail, McPeek was provided 400 mg of ibuprofen. Doc. 50 at ¶ 20; Doc. 65 at ¶ 20. Jail medical staff made clear to McPeek that they could not provide him additional medication or a special allergen-free meal tray until they had received

---

[1] Prescription refills are not permitted at all for oxycodone, a Schedule II drug. 21 U.S.C. § 829(a).

3

medical records documenting McPeek's active prescriptions and allergies. Doc. 50 at ¶ 30; Doc. 65 at ¶ 24.

McPeek believes that he was improperly denied access to prescribed medication while in the Pennington County Jail. He made nine medical inquiries and filed four grievances regarding denied medications and food allergies during his stay at the Pennington County Jail, each of which Pennington County officials responded to. Doc. 50 at 22; Doc. 65 at 20. The first two inquiries resulted in McPeek receiving and completing a release of information (ROI) form allowing the jail to obtain and view his medical records. Doc. 50 at ¶¶ 23–25; Doc. 65 at ¶ 20. The Pennington County Jail faxed ROIs to Siouxland Community Health, McKennan Hospital, and Sioux Falls Chiropractic for various medical records on January 20, and refaxed them on January 23. Doc. 50 at ¶¶ 26–28, 35; Doc. 52-2 at 10; contra Doc. 65 at ¶¶ 21–23, 26.[2] The Pennington County Jail received responses from McKennan Hospital and Sioux Falls Chiropractic on January 25. Doc. 50 at ¶¶ 36, 38; Doc. 52-2 at 10; contra Doc. 65 at ¶ 27. McKennan Hospital sent McPeek's records, which neither showed any active prescriptions nor confirmed his purported soy allergy. Doc. 50 at ¶ 37; Doc. 52 at 10; contra Doc. 65 at ¶ 28. But, the McKennan Hospital records did show he was allergic to bee stings and penicillin. Doc. 50 at ¶ 37; Doc. 52 at 10; contra Doc. 65 at ¶ 28. In its response to the ROI, Sioux Falls Chiropractic informed Pennington County that it had purged McPeek's records due to their age. Doc. 50 at ¶ 38; Doc. 52-2 at 11; contra Doc. 65 at ¶ 29. Siouxland Community Health did not respond to Pennington County's ROI while he

---

[2] McPeek contests ¶¶ 26–28 and 35–40 because Unknown Officers have not entered the ROIs or reply documents into evidence. Doc. 65 at ¶¶ 21–23, 26–31. However, the fact that Pennington County Jail sent ROIs to Siouxland Community Health, McKennan Hospital, and Sioux Falls Chiropractic is established by filings in the court record and would be admissible in evidence anyway under the business records exception. Fed. R. Evid. 803(6)(B). Doc. 52-2 contains records "kept in the course of a regularly conducted activity" of the jail, showing that the ROIs had been sent and responded to.

remained at the Pennington County Jail. Doc. 50 at ¶ 40; contra Doc. 65 at ¶ 31; cf. Doc. 52-2. The other medical inquiries and grievances submitted by McPeek while in the Pennington County Jail involved either further medication requests or concerns regarding his food allergies. Doc. 50 at ¶ 29; Doc. 65 at ¶ 24.

On January 25, medical staff examined McPeek's right arm, which was observed as having a healing wound, with no warmth, swelling, or drainage. Doc. 50 at ¶ 32; Doc. 65 at ¶ 24. A medication order was placed for McPeek to have four 200 mg tablets of ibuprofen twice daily, but McPeek claims never to have received this medication. Doc. 50 at ¶ 33–34; Doc. 65 at ¶¶ 24–25. McPeek left Pennington County Jail for Yankton County Jail on the night of January 25. Doc. 50 at ¶ 41.

McPeek arrived at the Yankton County Jail on January 26, 2017. Doc. 46 at ¶ 15. When he was booked into the Yankton County Jail, he had no medication on his person and the only prescription documentation he had pertained to the prescriptions issued to him while incarcerated in Maricopa County. Doc. 46 at ¶¶ 19, 20; Doc. 64 at ¶¶ 8, 9. Since all of McPeek's prescriptions had ended before McPeek arrived in Pennington County, none of them were active when Yankton County took custody of him.

McPeek was placed in administrative segregation upon admission to Yankton County Jail, which is the basis for one of his remaining § 1983 claims. Rabe and Payer state that Corporal Steve Bolhouse and Corrections Officer Leah Brandt made the decision to place McPeek in administrative segregation for medical reasons, which McPeek denies although he lacks firsthand knowledge of who or why he was placed in administrative segregation. Doc. 46 at ¶¶ 16, 17; Doc. 64 at ¶¶ 5-7. Although nobody told him he was placed in administrative segregation as a punishment, McPeek believes that he may have been placed in administrative segregation in

5

retaliation for his prior assault in Tyndall on Officer Kelly Young from which the South Dakota charges arose. Doc. 46 at ¶¶ 23–26. Payer and Rabe, based on an affidavit signed by Payer himself, state that McPeek was assigned to administrative segregation because he still had several visible wounds from being shot apparently with rubber bullets during his arrest in Mesa. Doc. 45 at ¶ 6; Doc. 46 at ¶ 16. The intake documents from the Yankton County Jail show that McPeek was booked into the jail by Rabe and faced a pending charge of aggravated assault against law enforcement officer with the arrest warrant issued in Bon Homme County. Doc. 57-1 at 24. The medical history apparently taken on intake recorded that McPeek had allergies to bees, penicillin, beans, and soy; was not deemed a behavior risk; did not need isolation; had visual trauma from five rubber bullet wounds inflicted on December 15, 2016; had myofascial muscle and tissue damage, bulging disks in neck, fibromyalgia and scar tissue on internal organs; was not an escape risk; and was not a medical risk. Doc. 57-1 at 25–26.[3]

Curiously, despite being in administrative segregation ostensibly for medical reasons, McPeek received no medical treatment of any kind at Yankton County Jail until he met with physician's assistant Peter Murray on February 8, 2017, almost two weeks after he had been placed in administrative segregation. McPeek's initial medical request while at Yankton County Jail, dated February 6, 2017, triggered this visit, which was for "lump on chin & throat," which was found to be oozing and swollen and which was treated by a topical medicine. Doc. 42-2 at 1–4. McPeek made later medical requests at the Yankton County Jail for myofascial pain, lump on chin,

---

[3] McPeek, as mentioned above, responded to the motions for summary judgment in a somewhat unusual manner, submitting a "Statement" about his lack of legal resources as a pro se inmate, filing affidavits, and filing an amended complaint also styled an affidavit designed to forestall summary judgment. Docs. 57, 58, 59, 60, 66. McPeek attached the intake and booking materials to his proposed amended complaint, Doc. 57-1 at 24–28, and this Court considers those documents as part of the record and opposition to summary judgment.

nightmares and night sweats, and headache and dizziness. Each of those medical requests appear to have prompted appropriate responses and medical care. Doc. 42–4. The record is not entirely clear on how long McPeek remained in administrative segregation or at the Yankton County Jail, although fellow inmate Ronnie Young signed an affidavit stating that McPeek was eventually "moved out of segregation and put in general population" the day after the Super Bowl. Doc. 59 at ¶ 6.

II. Discussion

A. Motion to Amend Complaint

McPeek moves to amend his complaint for the second time. Doc. 57; see also Doc. 30. In his most recent proposed amended complaint, McPeek seeks to change his federal civil rights claim from a 42 U.S.C. § 1983 claim to a § 1986 negligent failure to prevent a conspiracy to interfere with civil rights claim. Doc 57-1 at 1. He also seeks to add state tort claims against each defendant and identifies certain defendants by name. Doc. 57-1 at 11–12. Generally, "[t]he court should freely give leave" to a party to amend its complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, denying leave to amend a complaint "is appropriate . . . in those limited circumstances in which undue delay, bad faith on the part of the moving [party], futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated." Roberson v. Hayti Police Dep't, 241 F.3d 992, 995 (8th Cir. 2001) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). The amendment sought by McPeek is futile, so the Court denies his motion for leave to amend.

McPeek's proposed amended complaint contains an invalid § 1986 claim because the proposed amendment to the complaint does not include a § 1985 claim. See McIntosh v. Ark. Republican Party-Frank White Election Comm., 766 F.2d 337, 340 (8th Cir. 1985) ("Recovery under section 1986 is dependent on the existence of a claim under section 1985 . . . ."). McPeek

misconstrues § 1986, treating it as though it constitutes a cause of action for general negligence leading to violations of one's civil rights. See, e.g., Doc. 57-1 at 1 (referring to § 1986 as "cause of action negligence"). McPeek's desired amendment fails to state a valid § 1986 claim and is frivolous.

Because the lone federal claim in McPeek's proposed amended complaint—the § 1986 claim—is frivolous, this Court would not exercise supplemental jurisdiction over the state tort claim, which is the only other claim in the proposed amended complaint. Federal courts may exercise supplemental jurisdiction over state claims which do not involve diversity or a federal question if the claims are "so related to claims in the action within . . . original [federal] jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) [of § 1367] if . . . the district court has dismissed all claims over which it has original jurisdiction." Id. § 1367(c)(3). The principle of comity weighs strongly against federal courts exercising jurisdiction over cases where diversity or a federal question is absent. See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided . . . as a matter of comity . . . ."). McPeek presents no countervailing reason why his state law claim should not be litigated in state court, so this Court sees no reason to consider hearing it. Consequently, McPeek's motion to amend his complaint is denied as futile.

**B. Motions for Summary Judgment**

**1. Summary Judgment Standard**

Summary judgment is proper when "the evidence, viewed in the light most favorable to the nonmoving party, shows that no genuine issue of material fact exists and that the moving party

is entitled to judgment as a matter of law." Cordry v. Vanderbilt Mort. & Fin., Inc., 445 F.3d 1106, 1109 (8th Cir. 2006) (quoting Bockelman v. MCI Worldcom, Inc., 403 F.3d 528, 531 (8th Cir. 2005)); see also Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when a "reasonable jury [could] return a verdict for either party" on a particular issue. Mayer v. Countrywide Home Loans, 647 F.3d 789, 791 (8th Cir. 2011). To withstand a properly made motion for summary judgment, the nonmoving party must provide "sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." Moody v. St. Charles Cty., 23 F.3d 1410, 1412 (8th Cir. 1994) (alterations in original).

### 2. Defendants' Motions for Summary Judgment

*Unknown Pennington County Jail Officers' Motion*

McPeek's sole claim against Unknown Pennington County Officers is a § 1983 claim alleging that they violated the Eighth Amendment by wrongfully delaying or denying him treatment and access to medications he had been prescribed. See Doc. 8 at 21–22; Doc. 9 at 7. "[A] prison official who is deliberately indifferent to the medical needs of a prisoner violates the prisoner's constitutional rights." Letterman v. Does, 789 F.3d 856, 861 (8th Cir. 2015). Deliberate indifference includes "indifference . . . manifested by prison doctors in their response to the prisoner's needs[,] . . . by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104–105 (1976) (footnote omitted). McPeek's complaint alleges Pennington County Jail officials intentionally denied and delayed his access to medical care and intentionally interfered with his access to preexisting prescriptions.

No one at the Pennington County Jail intentionally denied or delayed McPeek's access to necessary medical treatment as a matter of law. After completing his intake form upon his arrival

at the jail on January 20, 2017, McPeek was placed on a lower bunk restriction and referred to medical staff. Doc. 50 at ¶ 18; Doc. 65 at ¶ 18. He was provided 400 mg doses of ibuprofen beginning on his first night. Doc. 50 at ¶ 20; Doc. 65 at ¶ 20. The jail staff had McPeek sign ROIs and actively sought his treatment records to determine if he had active prescriptions or food allergies. Doc. 50 at ¶¶ 26–28, 35–38; Doc. 52-2 at 10. After a January 25 medical appointment, McPeek was to receive 800 mg ibuprofen twice daily. Doc. 52-2 at 5. McPeek left the Pennington County Jail on the night of January 25. Doc. 50 at ¶ 41. McPeek did not have active prescriptions for the drugs he sought from employees of the jail, so his lack of access to those drugs was proper. Nor did anyone at the Pennington County Jail intentionally interfere with McPeek's access to prescriptions, as McPeek did not have active prescriptions for any of the medications he sought when he arrived at the Pennington County Jail. The only prescriptions McPeek alleges were improperly withheld from him were the 800 mg ibuprofen, oxycodone, and docusate sodium prescribed in Maricopa County. Doc. 50 at ¶ 12; Doc. 65 at ¶ 12. However, none of these prescriptions were active when the Pennington County Jail assumed custody of McPeek.

Further, McPeek has not provided any evidence that any delay in treatment which may have occurred during his six days at the Pennington County Jail had a detrimental effect. "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997) (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994)). Thus, any claim by McPeek that a delay in medical treatment (if one occurred) amounted to a violation of the Eighth Amendment fails as a matter of law. Even if all reasonable inferences are made in favor of McPeek, Unknown Pennington County Officers are entitled to summary judgment.

*Rabe and Payer's Motion*

One of McPeek's claims against Rabe and Payer is that they too withheld the medications he had been prescribed in Maricopa County from him. These prescriptions were inactive before McPeek arrived at the Yankton County Jail, though. Consequently, McPeek's allegation that Payer or Rabe violated his Eighth Amendment right by refusing to provide him any of the medications he claimed to have a prescription for is groundless, and Payer and Rabe are entitled to judgment as a matter of law on that issue. Indeed, the records indicate that McPeek received timely responses to his medical requests made at the Yankton County Jail. Doc. 42-4.

McPeek's remaining claim against Rabe and Payer involves his placement in segregation in the Yankton County Jail, even though he had not been disciplined. "Pretrial detainees are presumed innocent and may not be punished." Martinez v. Turner, 977 F.2d 421, 423 (8th Cir.1992) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)). "The determination whether a particular restriction or condition accompanying pretrial detention is punishment turns on whether the restriction or condition is reasonably related to a legitimate governmental objective." Id. (citing Bell, 441 U.S. at 538–39). Placing a pretrial detainee in administrative segregation is punishment. Id. (citing Chestnut v. Magnusson, 942 F.2d 820, 823 (1st Cir. 1991)); Bell v. Wolff, 496 F.2d 1252, 1254 (8th Cir. 1974); see also Phillips v. Kiser, 172 F. App'x 128, 129 (8th Cir. 2006) (per curiam) (finding that pretrial detainee stated a claim against prosecutor for ordering solitary confinement to punish the detainee).

Rabe and Payer assert that "McPeek was not placed in administrative segregation for any reason related to discipline or punishment; rather it was for purposes of medical isolation." Doc. 46 at ¶ 18. Payer submits an affidavit to that effect, but states that two others actually made the decision to place McPeek in administrative segregation. Doc. 45 at ¶ 6. Rabe meanwhile is listed

11

as the booking officer on intake. Doc. 57-1 at 24. McPeek contests that his placement in administrative segregation was for medical reasons, but he lacks firsthand knowledge and relies on the booking forms and an affidavit of a fellow inmate at the time. A genuine issue of material fact exists on the legitimacy of Rabe and Payer's assertion as to why McPeek was placed in administrative segregation.

The Yankton County Jail's booking forms do not explain why McPeek was placed in segregation. Doc. 57-1 at 25. The medical history lists medical conditions and visual trauma from rubber bullets, but characterizes McPeek as "no" on medical risk. Doc. 57-1 at 25–26. Moreover, the jail apparently did not furnish McPeek any medical treatment of any kind until February 8, 2017, some two weeks after he was placed in segregation ostensibly due to his medical condition. Doc. 42-4. McPeek's fellow inmate Ronnie Young stated in an affidavit that, when McPeek asked jail staff why he had been placed on administrative segregation, "the staff would tell him they didn't have room [elsewhere] in the jail for him," even though cells were available outside of administrative segregation. Doc. 59 at ¶¶ 4, 5. If all inferences are made in the light most favorable to McPeek, a genuine question of material fact exists regarding the reason for his administrative segregation.

There may also be a genuine issue of material fact regarding the role of the remaining two defendants—Rabe and Payer—in placing and keeping McPeek in administrative segregation in the first instance. Rabe and Payer have attributed the decision to Corporal Steve Bolhouse and Corrections Officer Leah Brandt for placing McPeak in administrative segregation initially. Doc. 46 at ¶¶ 16, 17; Doc. 64 at ¶¶ 5–7. McPeek has not sought to amend his complaint to add those two as defendants or to make a § 1983 claim against them. Rabe was listed as the booking officer and Payer, according to McPeek, has control over where inmates are placed, so this Court cannot

12

grant them summary judgment on their alleged role in placing or retaining McPeek in administrative segregation.

**III.  Conclusion**

For the reasons stated above, it is hereby

ORDERED that McPeek's Motion for Leave to Amend Complaint, Doc. 57, is denied. It is further

ORDERED that Unknown Pennington County Officers' Motion for Summary Judgment, Doc. 48, is granted and their joinder in the motion for entry of default, Doc. 71, is denied as moot. It is further

ORDERED that Rabe and Payer's motion for summary judgment, Doc. 41, is granted in part with respect to the claim involving medical care and medications for McPeek but denied as to the claim regarding his placement in segregation.  It is further

ORDERED that Rabe and Payer's motion for entry of order of default, Doc. 68, is denied. It is finally

ORDERED that, if McPeek wishes to amend his complaint strictly to add the two individuals who Rabe and Payer claim made the decision to place McPeek in segregation or seek to have the Court reconsider appointment of counsel, McPeek is to file such motions, with an attached amended complaint, no later than 21 days after this opinion and order is filed.

DATED this 2nd day of July, 2018.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE